27482, 27538. McDANIEL *v.* ATLANTA COCA-COLA
BOTTLING COMPANY; and *vice versa.*

Decided May 12, 1939.

94

*H. O. Hubert Jr., Talmadge, Fraser & Camp,* for plaintiff.
*Philip H. Alston, James A. Branch,* for defendant.

SUTTON, J. ■ The defendant filed in this court a motion to dismiss the writ of error, on the ground that no error is assigned on any ruling, order, decision, or charge of the court which has necessarily controlled the verdict or final judgment of the trial court, and that it is insufficient under the Code, § 6-804; it being contended by movant that the first assignment of error presents no question for review, and, while excepting to the allowance of the amendment to the defendant's plea and answer, does not recite what ground of objection was urged before the trial court; that the second assignment of error presents no question for review, in that, while excepting to the judgment overruling the general demurrer to the plea and answer as amended, it does not aver or attempt to show how or in what manner the judgment necessarily controlled the verdict and final judgment, or how or in what manner the judgment operated to prejudice the rights of the plaintiff or to control or affect the verdict and final judgment; and that the third assignment of error does not of itself present any question for review, but necessarily depends upon valid exceptions and assignments of error.

The present record contains no brief of evidence, and no copy of the charge of the court, but the right to bring a direct bill of exceptions is predicated on the Code, § 6-804, which provides: "In any case where the judgment, decree, or verdict necessarily has been controlled by one or more rulings, orders, decisions, or charges of the court, and the losing party desires to except to such judgment, decree, or verdict, and to assign error on the ruling, order, decision, or charge of the court, it shall not be necessary to make a motion for new trial, nor file a brief of the evidence, but the party complaining shall be permitted to present a bill of exceptions containing only so much of the evidence or statement of facts as may be necessary to enable the appellate court to clearly understand the ruling, order, decision, or charge complained of." The present bill of exceptions assigns error on antecedent rulings of the trial court, and alleges, not only that they entered into and affected the final result of the case in which verdict and final judgment were

■

rendered, but that they were in fact controlling; and error is assigned on the action of the court in permitting the verdict and final judgment to be rendered. In the first assignment of error it is set out that to the allowance of the amendment the plaintiff excepted, and now excepts and assigns error, on the ground that the amendment set up no legal defense to the plaintiff's action, and that the allowance was contrary to law. Exception was also taken to the action of the court in permitting the verdict and final judgment to be rendered. In the second assignment of error it is recited that to the order of the court in overruling the general demurrer to the plea and answer of the defendant, as amended, the plaintiff excepted, and now excepts and assigns the same as error, as being contrary to law, and because the plea and answer as amended set up no legal defense to the plaintiff's action, and that the judgment was contrary to law; and again it is recited that the court erred in permitting the verdict and final judgment to be entered. In the third assignment of error it is again recited that the court erred in permitting the verdict and final judgment to be rendered, upon the ground that the same was contrary to law, the court having overruled the plaintiff's demurrer to the defendant's plea and answer as amended, which judgment was, as the plaintiff contends, controlling. It is clear from the bill of exceptions that the plaintiff has assigned error on good and sufficient grounds to the judgments of the court in allowing the amendment of the defendant and in overruling the general demurrer of the plaintiff to the plea and answer of the defendant as amended; that these orders were antecedent, and were alleged to be controlling of the verdict and final judgment which were rendered after evidence was introduced by the defendant under the amendment to the original answer of the defendant. In the situation presented, no brief of evidence or copy of charge of the court is necessary; and the writ of error is in compliance with the ruling in *Lyndon* v. *Ga. Ry. & El. Co.*, 129 *Ga.* 353 (58 S. E. 1047), *Potts* v. *Prior*, 131 *Ga.* 198 (62 S. E. 77), *Williams* v. *Seaboard Air-Line Ry. Co.*, 165 *Ga.* 655 (141 S. E. 805), *Childs* v. *New England Mutual Life Insurance Co.*, 184 *Ga.* 637 (192 S. E. 433), and *McRae* v. *Boykin*, 50 *Ga. App.* 866 (179 S. E. 535). The motion to dismiss is without merit, and is denied.

■ In the present case the final judgment is not excepted to for

any reason other than that the court erred in permitting it to be rendered after the alleged erroneous rulings as to the allowance of the amendment and overruling the plaintiff's demurrer to the amended plea and answer of the defendant. Disconnected from such antecedent rulings, the judgment is not objected to for any defect otherwise inherent. The antecedent rulings may be disposed of in one discussion. It is contended by the plaintiff that no legal defense was set up either in the amendment or in the plea and answer as amended, that reversible error was committed by the court in such rulings, that the verdict and judgment were controlled thereby, and that thereby no legal termination of the case resulted. The defendant contends that the amendment set up facts which showed that the plaintiff had waived her right of privacy, if any existed, by expressly or impliedly consenting to the acts admittedly done by it; that if the facts do not show consent, they are to be considered by a jury in extenuation or mitigation of damages; and that, part if not all of the substance of the pleadings being good, the court did not err in its rulings for the reason assigned.

A preliminary examination of the nature of the action in the present case may appropriately be made. Whatever may be the rule in other jurisdictions as to the right of one to maintain an action for invasion of privacy, it has been definitely settled in this State that such a right exists. *Pavesich* v. *New England Life Insurance Co.*, 122 *Ga.* 190 (50 S. E. 68, 69 L. R. A. 101, 106 Am. St. R. 104, 2 Ann. Cas. 561); *Bazemore* v. *Savannah Hospital*, 171 *Ga.* 257 (155 S. E. 194); *Newcomb Hotel Co.* v. *Corbett*, 27 *Ga. App.* 365 (108 S. E. 309); *Byfield* v. *Candler*, 33 *Ga. App.* 275 (125 S. E. 905); *Young* v. *Western & Atlantic Railroad*, 39 *Ga. App.* 761 (148 S. E. 414). In the *Pavesich* case, in an elaborate opinion by Justice Cobb it was demonstrated that, although it may not have been asserted for a long period of time, such right existed, and that it was the duty of the courts to give relief by the application of recognized principles. Among other things it was held: "2. A right of privacy is derived from natural law, recognized by municipal law, and its existence can be inferred from expressions used by commentators and writers on the law as well as by judges in decided cases. 3. The right of privacy is embraced within the absolute rights of personal security and personal liberty. 4. Personal security includes the right to exist and the right to the en-

joyment of life while existing, and is invaded not only by a deprivation of life, but also by a deprivation of those things which are necessary to the enjoyment of life according to the nature, temperament, and lawful desires of the individual. 5. Personal liberty includes not only freedom from physical restraint, but also the right 'to be let alone,' to determine one's mode of life, whether it shall be a life of publicity or of privacy, and to order one's life and manage one's affairs in a manner that may be most agreeable to him, so long as he does not violate the rights of others or of the public." It was also held: "8. The right of privacy may be waived either expressly or by implication, except as to those matters which law or public policy demands shall be kept private; but a waiver authorizes an invasion of the right only to such an extent as is necessarily to be inferred from the purpose for which the waiver is made. A waiver for one purpose and in favor of one person or class does not authorize an invasion for all purposes or by all persons and classes." In the opinion it was said: "The right of privacy has its foundation in the instincts of nature. It is recognized intuitively, consciousness being the witness that can be called to establish its existence. Any person whose intellect is in a normal condition recognizes at once that as to each individual member of society there are matters private and there are matters public so far as the individual is concerned. Each individual as instinctively resents any encroachment by the public upon his rights which are of a private nature as he does the withdrawal of those of his rights which are of a public nature. A right of privacy in matters purely private is therefore derived from natural law. . . The right of privacy within certain limits is a right derived from natural law, recognized by the principles of municipal law, and guaranteed to persons in this State by the constitutions of the United States and of the State of Georgia, in those provisions which declare that no person shall be deprived of liberty except by due process of law. . . It may be said that to establish a liberty of privacy would involve in numerous cases the perplexing question to determine where this liberty ended and the rights of others and of the public began. This affords no reason for not recognizing the liberty of privacy and giving to the person aggrieved legal redress against the wrong-doer in a case where it is clearly shown that a legal wrong has been done. . . The law stamping the un-

breakable seal of privacy upon communications between husband and wife, attorney and client, and similar provisions of the law, is a recognition, not only of the right of privacy, but that for the public good some matters of private concern are not to be made public even with the consent of those interested. It therefore follows from what has been said that a violation of the right of privacy is a direct invasion of a legal right of the individual. It is a tort, and it is not necessary that special damages should have accrued from its violation in order to entitle the aggrieved party to recover. Civil Code, § 3807 [1933, § 105-101]. In an action for invasion of such right the damages to be recovered are those for which the law authorizes a recovery in torts of that character; and if the law authorizes a recovery of damages for wounded feelings in other torts of a similar nature, such damages would be recoverable in an action for a violation of this right."

In the present case there was no agent or servant of the defendant actually present in the hospital room during the time that it is alleged that the plaintiff was holding intimate, personal, and private conversations with her husband, nurses and friends; but it is admitted by the defendant that it caused the receiving set to be installed in her room, and what was said and done by the plaintiff was listened to and recorded by the defendant's agent, at its direction, by means of the receiving set and the earphones as described in the petition. This conduct was as effectively an intrusion upon or an invasion of the privacy of the plaintiff as if the agent had actually been in the room. Eavesdropping is by statute in this State declared to be unlawful, and is punishable as for a misdemeanor. Code, §§ 26-2001, 26-2004. An eavesdropper or "Peeping Tom" is defined by the Code, § 26-2002, as "one who peeps through windows or doors, or other like places, on or about the premises of another, for the purpose of spying upon or invading the privacy of the persons spied upon, *and the doing of any other acts of a similar nature,* tending to invade the privacy of such persons." (Italics ours.) By § 105-103 it is declared that where the law requires one to forbear the doing of that which may injure another, although no action be given in express terms, upon the accrual of damages the injured party may recover. The acts of the defendant in the present case were admittedly wilful and intentional; and in such circumstances it is not necessary to recovery that physical injury

shall have been sustained, where there is mental pain and suffering. It is earnestly contended by counsel for the defendant, that, in the offense of the invasion of the privacy of another, the gravamen or essence of the action is publication or commercialization of the information obtained, and that without such no action is maintainable. There is nothing in the decided cases of this State, however, which indicates any such limitation or qualification of the right; and we think that under the decisions a person's privacy is invaded, in a case like the present, even though the information obtained be restricted to the immediate transgressor. Publication or commercialization may aggravate, but the individual's right to privacy is invaded and violated nevertheless in the original act of intrusion. It is clear that the petition in the present case set out a cause of action.

The only ground of objection to the allowance of the amendment and the overruling of the general demurrer to the plea and answer as amended is that no legal defense was set up. There was no attempt to strike only a portion, but the plaintiff sought to completely destroy the defendant's pleadings. If, however, any part of the pleadings was good defensively, the court did not err in refusing to disallow the amendment, and in overruling the general demurrer to the amended plea and answer, for any reason assigned. No citations are necessary to sustain this settled principle of law. It is contended by the defendant that even though, independently of publication or commercialization (which it is averred in the amended plea and answer was not made), a right of action under the facts alleged in the petition would ordinarily lie, the plaintiff can not recover in the present case, because she waived any right of privacy; and it is asserted that waiver arose by reason of the express or implied consent which is to be found in the plaintiff's alleged authorization to make any investigation that the defendant, through its attorneys or servants, saw fit. It is shown by the amended plea and answer that when their attorneys visited the patient to ascertain the nature of her claim, and informed her that they were not then empowered to make settlement but were there only to investigate her claim, she stated that they were at perfect liberty to make any kind of investigation concerning her, to inform themselves as to her fairness and honesty and the truthfulness of her statements and claims, and invited them, as representa-

tives of the defendant, to make any sort of investigation concerning herself and the alleged occurrences in connection with her claim; and that, because of information which they afterwards obtained, they became convinced that the written statements made by her in connection with her claim were wholly untrue, and that in substance she was preparing to perpetrate a fraud upon the defendant by filing a fake damage suit; and that acting in the utmost good faith, with a desire to discover such facts as would throw light upon the matter, and solely to protect the defendant's interests, and acting under the invitation of the plaintiff to make such investigation, the alleged acts were done, but that the defendant did not in any manner commercialize or attempt to commercialize any facts discovered, and that such facts were not communicated to any one save the defendant and its attorneys, and that in what it did the defendant was justified, and pleads justification, and denies that it has damaged the plaintiff in any sum whatever.

While this court will not, except in plain and indisputable cases, determine any issue of fact as a matter of law, we are constrained to hold that no justification is set out in the pleadings of the defendant. The attorneys, when the alleged waiver by implied consent was given, were in the presence of the plaintiff, and had obtained from her a full statement of her reasons why she felt she was entitled to payment of damages. They informed her that they were not authorized to make settlement, and were only investigating her claim. Thereupon, apparently as they were about to depart, as nothing else appears from the interview, she gave them permission to make any sort of investigation concerning herself and the alleged occurrences in connection with her claim. It would be taxing credulity too severely to assert that thereby she was inviting them to do what would otherwise be, not only a civil trespass, but an act which has been banned by the criminal statutes of this State. Her authorization could only reasonably relate to an investigation in other quarters, as she had concluded in her sickroom her version of the affair, and it necessarily comprehended an investigation only as to things past or information from others as to her character and honesty of purpose. If the argument of counsel for the defendant is to be accepted, the defendant was authorized, out of its hope and desire to obtain information relevant to the alleged injury, to listen in upon conversations in a sickroom of a nature so

intimate and private that their revelation might bring regrets or embarrassments which no recovery of damages could compensate. Conceivably a claimant might give to a prospective defendant a broad latitude of investigation; but for any court to hold that one might, under the invitation here involved, listen to the innermost secrets of husband and wife, so zealously guarded by the law and having no connection with a claim for damages, passes the understanding. Accordingly, we hold as a matter of law that under the facts and circumstances of the alleged invitation it did not include the commission of the acts by the defendant.

But while the defendant was not justified in what it did, either on the theory of invitation and waiver, or because, as contended by counsel in their brief, the plaintiff was about to commit a trespass upon it by instituting a fake damage suit, which later action, however, could not, in advance of judgment in favor of the defendant, be deemed a violation of any right of the defendant, the defendant is nevertheless entitled to set up any facts which might be considered by the jury in extenuation or mitigation of damages. Code, § 105-1802; *Ransone* v. *Christian,* 49 *Ga.* 491; *Henderson* v. *Fox,* 80 *Ga.* 479 (2) (6 S. E. 164); *Conley* v. *Arnold,* 93 *Ga.* 823 (2) (20 S. E. 762); *Thompson* v. *Shelverton,* 131 *Ga.* 714 (63 S. E. 220); *Hutcheson* v. *Browning,* 34 *Ga. App.* 276 (2) (129 S. E. 125); *Clay* v. *Brown,* 38 *Ga. App.* 157 (6) (142 S. E. 911); *Robinson* v. *DeVaughn,* 59 *Ga. App.* 37 (200 S. E. 213). Inasmuch as in the amendment and in the plea and answer as amended the defendant set up facts which were proper for the consideration of the jury as to extenuation or mitigation of damages, although not showing justification, the court did not err, for any reason assigned, in allowing the amendment and in overruling the general demurrer to the plea and answer as amended; and did not err in permitting the verdict and judgment to be rendered, for the reason assigned by the plaintiff. Consequently the judgment must be affirmed.

■ In the cross-bill of exceptions the defendant assigns error on the judgment of the court in overruling its general demurrer to the petition. For the reasons shown in the second division of this opinion, the petition as amended set out a cause of action for invasion of the privacy of the plaintiff, and the court did not err in overruling the demurrer.

*Judgment affirmed on main bill and cross-bill of exceptions. Stephens, P. J., and Felton, J., concur.*